IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-00973-PSF-OES

JOHNNY D. WADKINS,

Applicant,

v.

AL ESTEP, and
KEN SALAZAR, The Attorney General of the State of Colorado,

Respondents.

---

## RECOMMENDATION FOR DISMISSAL

---

**Entered by O. Edward Schlatter, United States Magistrate Judge.**

## INTRODUCTION

Applicant has pending before this court an Application For A Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application").  Respondents have filed their Answer, and applicant has submitted his Traverse.  Pursuant to 28 U.S.C. § 636(b)(1)(B), and F.R.Civ.P. 72(b), this matter has been referred to me for Recommendation.

Applicant is entitled to seek review or reconsideration of my recommendation by filing "objections" to this recommendation within ten days.  An advisement of his right to appeal or object is attached to this Recommendation on a page which is entitled "Advisement Under Fed.R.Civ.P. 72."

## BACKGROUND

On March 13, 1991, the applicant and another man, Michael Higgins, ("Higgins") visited the applicant's cousin, Jack Nevins, at the cousin's home in Otero County, Colorado.  While at the cousin's home, applicant allegedly took a gun owned by the cousin.  Applicant and Higgins then drove to Crowley County, where the applicant used the gun to rob a grocery store.

In September, 1992, applicant was charged in Otero County, with theft, possession of a weapon by a previous offender, and three habitual criminal counts. Applicant entered a plea of not guilty by reason of insanity, but he was found sane by a jury.  Following a jury trial on the substantive charges, applicant was convicted on all counts.  He was separately charged with and convicted in Crowley County of aggravated robbery and several additional crimes.  On July 2, 1993, he was sentenced to life imprisonment based on his habitual criminal counts in Otero County.

On direct appeal, applicant's conviction was affirmed in September of 1995, and the Colorado Supreme Court denied certiorari review on March 11, 1996.  In March, 1997, applicant filed his motion for state post-conviction relief pursuant to Crim.P. 35(c).  The motion was denied by the trial court, but affirmed in part and reversed in part by the Colorado Court of Appeals.  On remand for an evidentiary hearing on three claims of ineffective assistance of counsel, the applicant supplemented his motion with a claim of ineffective assistance of counsel that had not previously been considered. Ultimately, applicant was denied relief on these motions by the trial court and the Colorado Court of Appeals.  The Colorado Supreme Court denied certiorari review on March 8, 2004.  Applicant filed his habeas Application in this court on March 12, 2004.

Applicant seeks habeas corpus relief in this court pursuant to 28 U.S.C. § 2254 with regard to his conviction on the Otero County charges.  In his Application, he raises nine claims.  In his first claim, applicant argues that his due process rights were violated because jurors were given incorrect insanity instructions.  Claim Two alleges an unknowing and unintelligent waiver of applicant's right to testify.  Applicant's third claim asserts that his due process rights were violated when a lay witness was allowed to give an opinion on his sanity.  In Claim Four, applicant contends that there was insufficient evidence to support the charge of possession of a weapon by a previous offender, and in the fifth claim, he asserts that the court erred in allowing instructions to the jury regarding prior felony convictions.  Claim Six alleges that the court erred in not allowing the applicant to challenge the constitutionality of his prior convictions.  In his seventh through ninth claims, the applicant argues that he received ineffective assistance of counsel.

In their Answer to the allegations of the Application, the respondents concede that the habeas request has been timely filed under 28 U.S.C. § 2244(d)(1), and while not expressly waiving the defense, allow that it appears the applicant has exhausted his state remedies with regard to the claims he raises.  Respondents do, however, challenge the claims on their merits, arguing that (1) instruction to the jury on the presumption of sanity did not violate the applicant's due process rights, (2) applicant received a sufficient advisement to insure a knowing, voluntary and intelligent waiver of his right to testify, (3) permitting a lay witness to offer an opinion as to applicant's sanity did not violate his due process rights, (4) the evidence was sufficient to support

3

applicant's conviction for possession of a weapon by a previous offender, (5) there was

no violation of applicant's due process rights by the trial court's instruction during the

habitual phase of trial, (6) the state court's application of the Colorado statute of

limitations on collateral attacks to applicant's challenge of his previous convictions was

not fundamentally unfair, and (7) applicant's trial and appellate attorneys did not render

ineffective assistance of counsel.  Applicant has strenuously opposed the respondents'

Answer in his Traverse.

## DISCUSSION

**I.      Standard of Review.**

In the course of reviewing state criminal convictions in federal habeas corpus

proceedings, a federal court does not sit as a super-state appellate court.  See Estelle

v. McGuire, 502 U.S. 62, 67-68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990);

Pulley v. Harris, 465 U.S. 37, 41 (1984).  "When a federal district court reviews a state

prisoner's habeas [application] pursuant to 28 U.S.C. § 2254 it must decide whether the

[applicant] is 'in custody in violation of the Constitution or laws or treaties of the United

States.'  The court does not review a judgment, but the lawfulness of the [applicant's]

custody simpliciter."  Coleman v. Thompson, 501 U.S. 722, 730 (1991).  The exhaustion

of state remedies requirement in federal habeas cases dictates that a state prisoner

must "give the state courts one full opportunity to resolve any constitutional issues by

invoking one complete round of the State's established appellate review process."

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  Accordingly, based on denial of

certiorari review by the Colorado Supreme Court in applicant's case, habeas review in

this court is concerned with the proceedings in the Colorado Court of Appeals which was the final substantive proceedings in the state appellate review process.

Applicant's conviction became final after April 24, 1996, which is the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, an applicant is entitled to federal habeas relief only if he can establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2); see, also, Hale v. Gibson, 227 F.3d 1298, 1309 (10th Cir. 2000).

As the Supreme Court recently stated:

A state-court decision is contrary to . . . clearly established precedents if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result.  A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Brown v. Payton, - - - U.S. - - -, 125 S.Ct. 1432, 1438-39 (2005) (internal citations omitted).

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [those] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8 (2002).  So, when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard,

the reviewing court may presume an adjudication on the merits and apply AEDPA deference.  See Harris v. Poppell, 411 F.3d 1189, 1196 (10th Cir. 2005).

Factual findings made by the state trial and appellate courts are presumed correct, with the applicant having the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Darks v. Mullin, 327 F.3d 1001, 1007 (10th Cir. 2003).  "[W]hether a state court's decision was unreasonable must be assessed in light of the record [that court] had before it."  Holland v. Jackson, 542 U.S. 649 (2004) (per curiam) (citations omitted).

Even if the state court adjudication was contrary to or involved an unreasonable application of clearly established federal law, unless the error is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by harmless-error standards," Brecht v. Abrahamson, 507 U.S. 619, 629 (1993), the harmless error standard of Brecht and O'Neal v. McAninch, 513 U.S. 432 (1995), must be applied. See Herrera v. Lemaster, 301 F.3d 1192, 1200 (10th Cir. 2002).  Under Brecht, habeas relief is not proper unless the error had a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht, 507 U.S. at 623.  O'Neal addresses the situation where the court is in "grave doubt" about the likely effect of the error on the jury's verdict – that is, where "the matter is so evenly balanced that [the court] feels [itself] in virtual equipoise as to the harmlessness of the error."  O'Neal, 513 U.S. at 435.  In such a case, O'Neal instructs the court to treat the error "as if it had a substantial and injurious effect or influence in determining the jury's verdict."  Id. (quoting Brecht, 507 U.S. at 623).

**II.    Plaintiff's Claims**.

**A.    Insanity Instruction.**

The applicant challenges the trial court's instruction to the jury on the "presumption" of sanity at the conclusion of the sanity trial, arguing that it improperly shifted the burden of proving insanity to him in violation of his due process rights. Applicant's argument was adjudicated on the merits in his direct appeal to the Colorado Court of Appeals, and was rejected.  ANSWER, Docket #12, Exh. D, p. 1 (citing to the state appellate court's contemporaneously issued opinion in the applicant's appeal of his Crowley County, Colorado, convictions in Appeal No. 93CA1369 [attached as Exh. E]).   Habeas review in this court, therefore, is governed by the provisions of 28 U.S.C. § 2254(d)&(e).

Presumptions that improperly shift the burden of proof in criminal cases are prohibited by well-established principles of law, Mullaney v. Wilbur, 421 U.S. 684 (1975), and presumptions that conclusively presume an element of the offense are also forbidden, Sandstrom v. Montana, 442 U.S. 510 (1979).  The presumption of sanity has been characterized by the United States Supreme Court as a "rebuttable presumption." Davis v. United States, 160 U.S. 469, 486 (1895). The presumption can be considered by the jury along with other evidence in determining whether sanity has been established beyond a reasonable doubt after some proof of insanity has been presented.  Id. at 488.

In determining whether an instruction to a jury gives rise to a constitutional violation, the single instruction is not viewed in isolation, but rather in the context of the

7

overall charge.  Cupp v. Naughten, 414 U.S. 141, 146-47 (1973).  The analysis is not whether the trial court failed to isolate and correct a particular, improper instruction, but whether "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  Id.  The burden on a habeas applicant to demonstrate that the improper instruction was so prejudicial that it supports a collateral attack on the constitutionality of his conviction is far greater than what is required to show plain error on direct appeal.  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

The opinion of the Colorado Court of Appeals sets forth the trial court's jury instruction as follows:

> The law presumes everyone to be sane.  However, after some evidence of insanity is introduced, the burden of proof is upon the People to prove to the satisfaction of the jury beyond a reasonable doubt that the defendant was sane at the time of the commission of the crimes charged. . . .
>
> If you find from the evidence that the People have proved the Defendant's sanity beyond a reasonable doubt according to the definition you will receive, then you will find the Defendant sane.  If you find from the evidence that the People have not proved the Defendant's sanity beyond a reasonable doubt according to the definition you will receive, then you will find the Defendant not guilty by reason of insanity.

ANSWER, Docket #12, Exh. E, p. 2.

Based on the language of this instruction, which the applicant does not dispute, the Colorado Court of Appeals determined that ". . . the instruction clearly indicates that the presumption gives rise to a rebuttable inference and that, once the question of sanity has been raised, the prosecution has the ultimate burden of proof on the issue."  Id. at Exh. E, p. 3.  The appellate court's ruling, while not citing to Supreme Court cases, is not contrary to nor an unreasonable application of Supreme Court's reasoning

with regard to the presumption of sanity or its presentation to a jury, or the requirement of review of an instruction as a whole to determine impropriety.  Further, the state court ruling does not contradict Supreme Court precedent.

Additionally, the decision is not an unreasonable determination of facts in light of the evidence presented to it.  The Colorado Court of Appeals found that "no reasonable juror could have interpreted the challenged instruction as describing a mandatory presumption that shifted the burden of proof to [applicant] on the issue of sanity." Id. To be successful on his claim, applicant's argument that the charge operated to deny him due process of law is dependent upon reading the trial court's reference to the presumption in isolation.  However, when the presumption language is properly read in context of the entire instruction, as did the state appellate court, it is clear that the trial court informed the jury that the State had the burden of proving beyond a reasonable doubt that the applicant was sane.  Thus, when the instruction is viewed as a whole, the defect complained of by the applicant cannot be said to rise to the level of a constitutional violation.

Accordingly, adjudication of the applicant's first claim for relief by the State courts did not arrive at a conclusion opposite to that reach by the Supreme Court on a question of law, unreasonably apply a governing legal principle to the facts of the applicant's case, or result in an unreasonable determination of facts in light of the evidence presented.  Without such a finding, harmless error analysis is not necessary. Therefore, applicant's request for federal habeas relief on this account must fail.

**B.    Waiver of Right to Testify.**

Applicant claims that he did not make a knowing, voluntary and intelligent waiver of his right to testify because in the trial court's advisement to him, he was not informed that, if he chose to testify, any evidence of prior felony convictions brought out during the substantive phase of trial could not be used to prove the habitual criminal charges. On direct appeal, the Colorado Court of Appeals determined that all information required by state law, under People v. Curtis, 681 P.2d 504 (Colo. 1984) and its progeny, was included in the advisement.  ANSWER, Docket #12, Exh. D, p. 4 and Exh. E, pp. 3-4.

As raised by the applicant in his direct appeal, a criminal defendant does have the constitutional right to testify on his own behalf.  Rock v. Arkansas, 483 U.S. 44, 51 (1987).  However, the Supreme Court has not yet decided whether the trial court has an affirmative duty to advise the defendant of this right or obtain an on-the-record waiver of it.  See U.S. v. McMeans, 927 F.2d 162, 163 (4th Cir. 1991).  Yet several circuits have held that a trial court has no duty to make such an inquiry.  See U.S. v. Yee Soon Shin, 953 F.2d 559, 561 (9th Cir. 1992); Siciliano v. Vose, 834 F.2d 29, 29 (1st Cir. 1987); Ortega v. O'Leary, 843 F.2d 258, 261 (7th Cir. 1988).  Therefore, the Colorado Court of Appeals decision on this matter cannot be said to be "contrary to, or involve[ ] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Based upon the evidence presented to it, to include a transcript of the advisement which was given, see ANSWER, Docket #12, Exh. B1, Appx. A, the state appellate court found:

10

> Here, defendant was advised that, if he testified, and if the prosecutor questioned him on cross-examination about his prior felony convictions, the jury would be instructed that it could consider such convictions only as to his credibility as a witness.

Id. at Exh. E, p. 3.

The appellate court was provided with no additional factual evidence in this regard.  Applicant's legal argument drawing analogy between advisement in habitual criminal trials and bifurcated felon with a gun trials was duly considered by the court, and rejected based upon state precedent on point to the issue.  Id. at Exh. E, p. 4. Based upon the evidence shown to be before the Colorado Court of Appeals, and the lack of any evidence in the record to the contrary, there exists no basis for a finding that the decision of the state court resulted from an unreasonable determination of the facts.

Finally, the arguments of the applicant that the advisement he received did not comport with the requirements found in Curtis, People v. Chavez, 853 P.2d 1149 (Colo. 1993), or People v. Tafoya, 654 P.2d 1342 (Colo.Ct.App. 1982) cannot provide a basis for habeas relief in this court.  Only "violation[s] of the Constitution or laws or treaties of the United States" are cognizable under § 2254.  28 U.S.C. § 2254(a).  Therefore, any alleged violation of Colorado state law or Constitution will not constitute a valid claim in a § 2254 habeas Application.  Accordingly, federal habeas relief under applicant's second claim is not warranted.

### C.   Lay Witness Testimony on Issue of Sanity.

Applicant next argues that the trial court erred in admitting testimony from Dr.

11

Berg, his treating emergency room physician, concerning his sanity in violation of his

right to due process.  In reviewing the applicant's argument on direct appeal, the

Colorado Court of Appeals determined that the testimony satisfied state evidentiary

requirements, and therefore was properly admitted, and also determined that even if

the admission of the testimony was in error, the error was harmless.  See ANSWER,

Docket #12, Exh. D, pp. 4-6.

The focus in a habeas challenge to the admissibility of evidence is not whether

state rules of evidence were violated; the focus is confined to "deciding whether a

conviction violated the Constitution, laws, or treaties of the United States."  Estelle, 502

U.S at 68.  The issue is whether the challenged evidence "so infused the trial with

unfairness as to deny due process of law."  Id. at 75.

The state appellate court applied a plain error standard on review on this issue,

since the applicant had not made a contemporaneous objection to the admission of the

testimony at trial.  See ANSWER, Docket #12, Exh. D, p. 5.  Colorado's plain error test is

based upon principles of due process, in that:

> Plain error occurs when we can say that the error so undermined the
> fundamental fairness of the trial itself as to cast serious doubt on the
> reliability of the judgment of conviction.

Id. (citing People v. Kruse, 839 P.2d 1 (Colo. 1992)).

There is no practical distinction between the formulations of plain error under

Colorado state law and the federal due process test, which requires reversal when

error "so infused the trial with unfairness as to deny due process of law."  Estelle, 502

U.S. at 75.  Because the Colorado Court of Appeals applied the same test this court

12

would apply to determine whether there has been a due process violation, deferral to the state court ruling is warranted unless it "unreasonably appli[ed]" that test.  28 U.S.C. § 2254(d).  It did not.

The applicant argued that Dr. Berg "clearly lacked the sufficient knowledge and contact necessary to give a lay witness' opinion as to [applicant's] sanity."  ANSWER, Docket #12, Exh. A1.  Based upon the evidence presented, however, the state court found that:

> [T]he doctor's testimony was rationally based on her observation of the [applicant] during her medical treatment of him. . . . In addition, since defendant's mental condition was an issue in the case, the testimony may have assisted the jury better to understand a fact in issue. . . . Moreover, the testimony was cumulative of that of two expert witnesses who evaluated [applicant] and who testified that they believed him to be sane.

ANSWER, Docket #12, Exh. D, p. 6.  Accordingly, the Colorado Court of Appeals determined that error had not been committed.  Id.  Neither the reasoning nor the result of the state-court decision contradicts the due process principles which have been announced by the Supreme Court.  It is applicant's burden to show that the state court's decision was objectively unreasonable, not merely that the state court applied Supreme Court rulings incorrectly.  Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002).  Neither applicant's Application nor his traverse provide a basis for finding that the state court unreasonably formulated or applied the plain error test in light of Supreme Court precedents.

Further, the record before the Colorado Court of Appeals demonstrates: Applicant had conceded that the doctor's testimony was proper as to his behavior and conduct.  Id. at Exh. A1, p. 22.  "Her opinion as to whether he knew right from wrong

13

was clearly based upon those perceptions." Id. at Exh. B1, p. 15 (*citing* the trial court

record).  Applicant presented no expert witnesses.  Id. at Exh. B1, p. 16.  Further,

applicant has failed to rebut the factual determination by the trial court and the state

appellate court that Dr. Berg's testimony was cumulative of that of two expert witnesses

who evaluated the applicant.  Accordingly, there is nothing in the record to demonstrate

that the state appellate court's decision resulted from an unreasonable determination of

the facts in light of the evidence presented.

The provisions of 28 U.S.C. § 2254(d)&(e) preclude federal habeas relief on

Claim Three of the Application, and therefore, the claim should be denied.

> **D.    Sufficiency of the Evidence on Conviction For Possession of a
>        Weapon by a Previous Offender.**

In his fourth claim for habeas relief, applicant argues, as he did on direct appeal

to the Colorado state appellate court, that there was insufficient evidence to support his

conviction of possession of a weapon by a previous offender.  Specifically, applicant

challenges that the evidence was insufficient to show he "possessed" a gun.

Generally, review of sufficiency of the evidence is a question of law.  See Griffin

v. United States, 502 U.S. 46, 58-59 (1991) (indicating that insufficiency of proof is

legal error).  However, with the passage of the AEDPA, the standard of review is less

clear in light of the provisions of 28 U.S.C. § 2254(d).  The Court of Appeals for the

Tenth Circuit has not yet determined, under the AEDPA, whether review of a state

court's sufficiency of the evidence determination is a legal issue under 28 U.S.C. §

2254(d)(1), or a factual finding under § 2254(d)(2) and (e)(1).  See Turrentine v. Mullin,

390 F.3d 1181, 1197 (10th Cir. 2004).  Under either analysis, however, the applicant

fails to overcome the burdens of § 2254(d) to obtain relief in this court.

The Supreme Court has opined that in assessing a claim of sufficiency of

evidence for conviction, "the relevant question is whether, after viewing the evidence in

the light most favorable to the prosecution, *any* rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia,

443 U.S. 307, 319 (1979).  While the Colorado Court of Appeals cited to state case law

for support, rather than Supreme Court rulings, it did correctly identify this standard in

reviewing the applicant's argument on direct appeal.  See ANSWER, Docket #12, Exh.

D, p. 8.

In applying the standard for sufficiency of the evidence to the facts of applicant's

case, the state appellate court looked to the language of the charging statute and state

case law which defined "possession" in the context of that statute.  Id.  The appellate

court determined that state law provided that "actual physical control" over a firearm

constitutes "possession."  Id.  Therefore, based on evidence establishing the

applicant's physical location and his actions at the spot where the gun was ultimately

found, and the state law definition of possession, the court found there to be sufficient

facts which when viewed in a light favorable to the prosecution, supported a conviction

of illegal possession of a firearm.  Id.

Applicant has failed to satisfy his burden in demonstrating the Colorado Court of

Appeal's conclusion that the evidence was substantial and sufficient to support

applicant's conviction was an objectively unreasonable application of the law to the

evidence presented.  Applicant reiterates his argument that the state failed to establish

that he was in actual or physical control of the firearm.  However, circumstantial

evidence is sufficient to support a criminal conviction.  See Rojem v. Gibson, 245 F.3d

1130, 1141 (10th Cir. 2001) (in dicta, determining circumstantial evidence was sufficient

to support murder conviction); see, also, Romano v. Gibson, 239 F.3d 1156, 1164-65

(10th Cir. 2001); People v. Rivera, 765 P.2d 624, 628 (Colo.Ct.App. 1988), rev'd on

other grounds, 792 P.2d 786 (Colo. 1990) (handgun was in plain view within "arm's

reach" of the defendant).

Additionally, the facts upon which the Colorado Court of Appeals based its

decision were reasonable in light of the evidence presented.  In his traverse, the

applicant references testimony and other information that was introduced in the trial

court which he appears to argue should have been given more weight and which

should cause the facts upon which the state appellate court based its decision to be

unreasonable.  However, this court "may not weigh conflicting evidence nor consider

the credibility of witnesses," and conflicting inferences must be presumed resolved in

the favor of the prosecution.  Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996).

The record before the state court demonstrated that on March 13, 1991, when

the applicant and Higgins visited the applicant's cousin, Jack Nevins, at Nevins' home,

Higgins waited in the car.  ANSWER, Docket #12, Exh. A1, p. 3.  On March 14, 1991, Mr.

Nevins discovered his gun was missing.  Id. at Exh. A1, p. 9.[1]  The gun was kept in a

---

[1] Mr. Nevins repeated the basic substance of his testimony in the theft case during applicant's trial on possession of a weapon charges.  Id. at Exh. A1, p. 10 and Exh. B1, p. 4.

closet in Mr. Nevins' bedroom, which was located next to the living room where the applicant sat while visiting his cousin. Id. at Exh. B1, p. 3. The closet had no door, and the gun was in a holster hanging on a nail on the wall of the closet. Id.  Many people were aware that Mr. Nevins owned the gun, and he noted that the doors to his house were routinely unlocked. Id. Mr. Nevins did not see the applicant take the gun, but he did not watch him during the entire visit. Id.

Testimony of the policemen who first contacted the applicant and Higgins, given in the theft trial but stipulated by the parties to be considered in the weapons possession trial[2], see ANSWER, Docket #12, Exh. B1, p. 5, demonstrated that Mr. Nevins' gun was found partly covered with dirt under the driver's side car door of the vehicle in which applicant and Higgins were traveling. Id. at Exh. A1, p. 9. While Higgins was in the driver's seat of the vehicle, the applicant was out of the vehicle, walking and moving his feet around in the area where the gun was found. Id.

In light of these facts, and "after viewing the evidence in the light most favorable to the prosecution," it is reasonable to conclude that a rational trier of fact could have found beyond a reasonable doubt that the applicant had possessed, used, or carried a firearm.

The state court adjudication in this regard was neither contrary to nor an unreasonable application of Jackson; nor was it based on an unreasonable

---

[2]The charges of theft and possession of a weapon by a previous offender were bifurcated for purposes of trial, so that the jury would not be informed about the applicant's criminal history during the trial of the theft charges. ANSWER, Docket #12, Exh. A1, p. 3 and B1, p. 2.

determination of the facts in light of the evidence presented.  Accordingly, federal

habeas relief on this ground is appropriately denied.

### E.    Jury Instructions in Habitual Criminal Trial.

Applicant contends that the trial court in his habitual offender trial erroneously

instructed the jury regarding the prosecution's burden of proof.  He argues that the

instructions impermissibly shifted to him the burden of proving that he had not been

previously convicted as charged.  The Colorado Court of Appeals did not address the

merits of this claim, or applicant's argument that the allegedly offending instructions

should not have been given, but instead, ultimately found that any error would be

harmless.  ANSWER, Docket #12, Exh. D, p. 10.

The Supreme Court has stated that, with respect to alleged errors in jury

instructions, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises

to the level of a due process violation."  Middleton v. McNeil, 541 U.S. 433, 437 (2004).

"The question is 'whether the ailing instruction[s] . . . so infected the entire trial that the

resulting conviction violates due process.'"  Id. (quoting Estelle, 502 U.S. at 72)).  Here,

the state appellate court found that even if it deemed the challenged instructions to be

improper, the applicant was not materially or substantially prejudiced nor was the

outcome of the trial effected.  ANSWER, Docket #12, Exh. D, p. 10.

Further, Supreme Court authority indicates that even where an instruction

impermissibly shifts the burden of proof, harmless error analysis is appropriate.  See

Carella v. California, 491 U.S. 263, 266 (1989); Rose v. Clark, 478 U.S. 570, 579

(1986).  The state court decision was based on state standards that are at least as

favorable to the applicant as the federal standards, and therefore, this court may

presume an adjudication on the merits and apply AEDPA deference.  See Harris, 411

F.3d at 1196.

The challenged instructions were based upon statutory language found at

Colo.Rev.Stat. § 16-13-102, and dealt with the admissibility of certain types of evidence

in habitual criminal proceedings as follows:

> [A] duly authenticated copy of the record of former felony convictions of
> the [applicant] and judgments of any court of record for any of said felony
> convictions against the [applicant] shall be prima facie evidence of such
> convictions and may be used in evidence against such party.
> Identification photographs and finger prints that are part of the record of
> such former convictions and judgments of any court of record or are part
> of the record at the place of such party's incarceration after sentencing for
> any of such former convictions and judgments shall be prima facie
> evidence of the identity of such party and may be used in evidence
> against him.

ANSWER, Docket #12, Exh. D, pp. 9-10.

A separate instruction indicated to the jury that:

> [P]rima facie is evidence sufficient to establish a given fact and which, if
> not rebutted or contradicted, will remain sufficient.

Id. at Exh. D, p. 10.

The degree of prejudice from an instruction error must be evaluated in the

context of the events at the trial.  United States v. Frady, 456 U.S. 152, 169 (1982).  In

this case, the jury had also generally been instructed of the prosecution's burden of

proof, and was advised that the applicant was presumed innocent, with the prosecution

having the burden of proving beyond a reasonable doubt that the applicant was the

person who was previously convicted of the prior offenses charged.  ANSWER, Docket

#12, Exh. D, p. 9.  Also, in the elemental instruction regarding each prior conviction, the jury was reminded that the prosecution had the burden of proving each of the elements beyond a reasonable doubt.  Id.  The state appellate court also found, and the applicant provided no evidence in rebuttal, that the applicant presented no evidence to contradict the "overwhelming" evidence presented by the prosecution concerning applicant's prior convictions.  Id. at Exh. D, p. 10.

The challenged instructions did not alter the presumption of innocence, and nothing in the instructions controverted the general instructions of the burden of proof. To accept applicant's position with regard to the challenged jury instructions would entail an unsubstantiated finding that the jury completely disregarded other instructions. Juries, however, are presumed to follow their instructions.  Zafiro v. United States, 506 U.S. 534, 540-41 (1993); United States v. Carter, 973 F.2d 1509, 1513 (10th Cir. 1992). Accordingly, there is no merit to the applicant's assertion that the state court decision was an unreasonable application of principles of clearly established federal law to the facts of his case.

Additionally, based upon the record before it, the state court's decision was not based on an unreasonable determination of the facts.  It is unrefuted that applicant "had no defense to the habitual criminal counts other than technical objections to the exhibits which he [did] not assert on appeal," and "[h]e did not present a closing argument."  ANSWER, Docket #12, Exh. B1, p. 13.

Applicant is not entitled to habeas relief under the arguments raised in Claim Five of his Application, and the same should be denied.

**F.    State Court's Application of Colo.Rev.Stat. § 16-5-402 to Bar Applicant's Collateral Attacks to His Prior Convictions.**

In affirming applicant's conviction on direct appeal, the Colorado Court of Appeals affirmed the trial court's denial of applicant's postconviction challenges to his prior convictions in the habitual offender charges against him as being barred by the limitations period imposed under Colo.Rev.Stat. § 16-5-402, and that his failure to commence the attack within the limitations period was not the result of justifiable excuse or excusable neglect.  ANSWER, Docket #12, p. 16-18.  In his Application filed in this court, however, the applicant has argued that the decision was fundamentally unfair as to deprive him of his rights to a fair proceedings and due process.  Principles of federal-state comity dictate that the statutory exhaustion requirement is met only when the substance of the federal habeas claim has been "fairly presented" to a state court.  Picard v. Conner, 404 U.S. 270, 278 (1971); Nichols v. Sullivan, 867 F.2d 1250, 1252 (10th Cir), cert. denied, 490 U.S. 1112 (1989).

Both federal and Colorado state courts have determined that a claim raised in a reply brief is not properly before the court for consideration.  See Codner v. United States, 17 F.3d 1331, 1332 n.2 (10th Cir. 1994) (stating that an issue raised for the first time in a reply brief is waived); People v. Czemerynski, 786 P.2d 1100 (Colo. 1990) (issue raised for the first time in a reply brief is not properly before an appellate court). In this case, applicant's concerns of fundamental fairness and due process were not addressed in his opening brief on appeal, but rather, in his reply brief.  See ANSWER, Docket #12, Exh. A1, pp. 28-32 and Exh. C, p. 8.  Accordingly, applicant's claim has not

21

been fairly presented to the state courts, and should be deemed unexhausted.

When faced with a mixed Application (i.e., containing exhausted and unexhausted claims), the district court may (1) dismiss the entire application without prejudice, allowing the applicant to exhaust state remedies, or (2) if the applicant's claims are meritless, deny the application without reference to the exhaustion issue. See Moore v. Schoeman, 288 F.3d 1231, 1232 (10th Cir. 2002).   In this case, applicant's claim in this regard is without merit, and therefore, the claim should be denied without reference to the exhaustion issue.

As succinctly stated by the respondent, "[t]he manner of operation of the Colorado statute of limitation on collateral attacks, including what is considered an exception to the statutory provisions, is solely a matter of state law." ANSWER, Docket #12, p. 18.  Because issues of state law are not cognizable on federal habeas review, Estelle, 502 U.S. at 67-69, claims based solely on alleged errors of state law will be reviewed to determine whether the alleged errors were "so grossly prejudicial [that they] fatally infected the [proceedings] and denied the fundamental fairness that is the essence of due process." Revilla v. Gibson, 283 F.3d 1203, 1212 (10th Cir. 2002) (citation omitted).

Although in the context of challenging sentencing enhancements in § 2255 and § 2254 proceedings, the Supreme Court has clearly spoken on the issue of appropriateness of time limitations and other procedural barriers in the context of collateral attacks on prior convictions.  In Daniels v. U.S., 532 U.S. 374 (2001), the defendant was convicted of being a felon in possession of a firearm in violation of 18

U.S.C. § 922(g)(1).  Based on prior convictions, his sentence was enhanced under the

Armed Career Criminal Act of 1984 ("ACCA").  After an unsuccessful direct appeal,

Daniels moved for relief under 28 U.S.C. § 2255, alleging that two of his prior

convictions were unconstitutional because they were based on guilty pleas that were

not knowing and voluntary, and because one conviction was the product of ineffective

assistance of counsel.  The Supreme Court held:

> If . . . a prior conviction used to enhance a federal sentence is no longer
> open to direct or collateral attack on its own right because the defendant
> failed to pursue those remedies while they were available (or because the
> defendant did so unsuccessfully), then that defendant is without recourse.

Daniels, 532 U.S. at 382.  Otherwise, "we would effectively permit challenges far too

stale to be brought in their own right, and sanction an end run around statutes of

limitations and other procedural barriers that would preclude the movant from attacking

the prior conviction directly."  Id. at 383.

Similarly, in Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394 (2001), a

state prisoner who filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2254 contended that his prior convictions, specifically the ones that influenced the

calculation of his current sentence, were the product of ineffective assistance of

counsel.  In extending its decision in Daniels to cover § 2254 applicants, the Supreme

Court stated:

> Accordingly, as in *Daniels*, we hold that once a state conviction is no
> longer open to direct or collateral attack on its own right because the
> defendant failed to pursue those remedies while they were available (or
> because the defendant did so unsuccessfully), the conviction may be
> regarded as conclusively valid. [citation omitted].  If that conviction is later
> used to enhance a criminal sentence, the defendant generally may not
> challenge the enhanced sentence through a petition under § 2254 on the

23

ground that the prior conviction was unconstitutionally obtained.

Coss, 532 U.S. at 403-04.

The Supreme Court grounded its holdings in Daniels and Coss primarily on "considerations relating to the need for finality of convictions and ease of administration." Id. at 402. The Supreme Court recognized that review of convictions on direct appeal, post-conviction review, and habeas review "are not available indefinitely and without limitation." Daniels, 532 U.S. at 381. "One of the principles vindicated by these limitations is a 'presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights.'" Id. (quoting Parke v. Raley, 506 U.S. 20, 29 (1992)). The Court also reasoned that the need for ease of administration requires the limitation of collateral review of expired state convictions. Coss, 532 U.S. at 403.

The Supreme Court's reasoning is equally applicable to the present situation. There is no meaningful difference between a collateral attack on an expired state convictions in habitual criminal proceedings and a collateral attack on an expired state criminal conviction underlying an enhanced sentence in a § 2255 or § 2254 proceedings. The Supreme Court's decisions in Daniels and Coss would indicate that the state court's determination that applicant's collateral attacks on three prior convictions were barred by the state statute of limitations was not grossly prejudicial nor did it deny the applicant fundamental fairness or due process. "Nothing in the Constitution or [Supreme Court] precedent requires such a result." Daniels, 532 U.S. at 383. Accordingly, applicant's claim in this regard should be denied.

24

**G.     Assistance of Trial and Appellate Counsel.**

In his motion for postconviction relief in the state courts, applicant alleged that

his trial counsel was constitutionally ineffective because he failed to obtain the

testimony of applicant's ex-wife at the sanity trial, he also alleged that he received

ineffective assistance of trial counsel because his attorney did not obtain a second

psychiatric evaluation of the applicant, and finally, the applicant contended that

appellate counsel rendered ineffective assistance on direct appeal by not arguing that

the time restrictions in Colo.Rev.Stat. § 16-5-402 did not apply to the applicant.  The

applicant raises the same arguments in his Application before this court.  Applicant is

entitled to relief on his claims of ineffective assistance only if the state court's decision

was contrary to or involved an unreasonable application of controlling federal law.  28

U.S.C. § 2254(d)(1).  Or, if the state court's decision was based upon an unreasonable

determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(2);

Wallace v. Ward, 191 F.3d 1235, 1247 (10th Cir. 1999) (claims of ineffective assistance

of counsel are mixed questions of law and fact).

In rejecting the applicant's postconviction arguments, the Colorado Court of

Appeals clearly identified and utilized the governing Supreme Court standard as set

forth in Strickland v. Washington, 466 U.S. 668 (1984), in its review and analysis of

ineffective assistance of counsel claims.  See ANSWER, Docket #12, Exh. R, pp. 2-3.

"To establish an ineffective assistance of counsel claim, applicant must show that: (1)

counsel's performance was outside the wide range of professionally competent

assistance; and (2) the defendant was prejudiced by counsel's errors."  Id. (citing

Strickland).

On review, the record demonstrates that the state court reasonably applied the Strickland standards to applicant's claims and reached a decision in accordance with controlling federal law.  Applicant contends that his ex-wife would have offered testimony concerning him having blackouts.  Trial counsel had tried to subpoena applicant's ex-wife, who lived in California, but a California court quashed the subpoena.  See ANSWER, Docket #12, Exh. R, p. 3.  Counsel did not challenge the California court's ruling, and introduced evidence concerning applicant's blackouts through other sources, including the applicant and his mother.  Id. at Exh. R, pp. 3-4.  The state appellate court found this action to be a strategic decision, and not deficient performance.  Id. The reasonableness of counsel's challenged conduct must be assessed at the time of the conduct.  Dever v. Kansas State Penitentiary, 36 F. 3d 1531, 1537 (10th Cir. 1994).  Neither hindsight nor success is the measure.  Id. Moreover, under Strickland, "the decision of what witness to call is a tactical one within the trial counsel's discretion."  Minner v. Kerby, 30 F.3d 1311, 1317 (10th Cir. 1994).

A psychologist was retained by applicant's trial counsel to evaluate the applicant prior to his sanity trial, but the evaluation was not favorable for the applicant.  See ANSWER, Docket #12, Exh. R, p. 4.  Applicant had also been evaluated by two different doctors at the Colorado State Hospital, and the evaluations were not favorable to the applicant.  Id. at Exh. R, p. 5.  Applicant was not entitled to another independent examination at state expense.  Id.  Although the applicant indicated he did not trust psychiatric evaluators affiliated with the government, he did not disclose that fact to trial

26

counsel until just prior to the hearing.  Id.

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  Strickland, 466 U.S. at 690.  Here, defense counsel made the decision in this regard after thorough investigation of law and the relevant facts.  Further, under Strickland, "[t]he reasonableness of an attorney's decision not to conduct an investigation is directly related to the information that the defendant has supplied."  Coleman v. Brown, 802 F.2d 1227, 1233 (10th Cir. 1986).  The Colorado Court of Appeals' determination that trial counsel's decision not to seek an additional psychiatric opinion was a reasonable strategy choice was consistent with Strickland and not an unreasonable application of the standard to the plaintiff's case.

Applicant had argued that the statutory limitations period under Colo.Rev.Stat. § 16-5-402 should not have begun to run until he became a Colorado resident, and that appellate counsel on direct appeal was ineffective for not raising the issue.  See ANSWER, Docket #12, Exh. R, p. 5.  The Colorado Court of Appeals looked to the plain meaning of the statute, and state case law, in rejecting the applicant's argument.  Id. at Exh. R, p. 6.  Applicant "provide[d] no support for his interpretation of [§ 16-5-402]."  Id. The state appellate court then found there to be no ineffective assistance of counsel because the law was well-settled against the applicant, and therefore, he could demonstrate no prejudice by the failure of appellate counsel to raise the issue.  Id.  A habeas applicant must establish prejudice by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." Id. Applicant presented no basis for such a finding either in the state court or in this court.

Additionally, the state court rejected applicant's claim that trial counsel was ineffective because he failed to obtain the testimony of applicant's ex-wife, and applicant's claim that counsel was ineffective for failing to obtain a second psychiatric evaluation of the defendant, because the applicant had failed to demonstrate that trial counsel's performance was deficient. Applicant's argument that appellate counsel was ineffective was rejected because he failed to demonstrate that he was prejudiced by the challenged conduct. There is no reason to address both components of the Strickland inquiry if the applicant makes an insufficient showing on one. Strickland, 466 U.S. at 694.

Finally the applicant fails to establish that, based upon the record before it, the decision of the Colorado Court of Appeals was based upon an unreasonable determination of the facts. The findings made by the state appellate court are presumptively correct, and plaintiff has provided no clear and convincing evidence to rebut those findings. Accordingly, plaintiff cannot obtain habeas relief in this court on his claims that he was afforded ineffective assistance of counsel and his claims should therefore be dismissed.

## CONCLUSION

In viewing the merits of the applicant's claims, applicant is not entitled to relief under 28 U.S.C. § 2254. Pursuant to Rule 8 of the rules governing section 2254

proceedings, no evidentiary hearing is required.

Based upon the foregoing analysis, and the entire record herein, I hereby

**RECOMMEND** that District Judge Phillip S. Figa  **DENY** the Application [Filed May 12,

2004; Docket #2], and enter an Order directing that this case be dismissed with

prejudice.

Dated at Denver, Colorado, this 28th day of October, 2005.

BY THE COURT:

s/ O. Edward Schlatter

_____

O. Edward Schlatter
United States Magistrate Judge

## ADVISEMENT UNDER FED. R. CIV. P. 72

Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. FED. R. CIV. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. Thomas v. Arn, 474 U.S. 140, 155 (1985); Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991); Niehaus v. Kansas Bar Ass'n, 793 F.2d 1159, 1164 (10th Cir. 1986).